IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUNKYOO KIM,                          |
                                      |
      Plaintiff,                      |
                                      |           Civil Action No.
vs.                                   |           1:18-CV-04595-ELR
                                      |
JC KLEEN, INC., and                   |
JANG W. CHO,                          |
                                      |
      Defendants.                     |

## BRIEF IN SUPPORT OF
## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants J C Kleen, Inc. ("J C Kleen"), and Jang W. Cho ("Cho") (hereinafter collectively "Defendants"), by and through undersigned counsel, and hereby respectfully present this Brief in support of their Response in Opposition to Plaintiff's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Plaintiff Sunkyoo Kim worked for Defendant J C Kleen, Inc., as a delivery driver, from 2013 to 2018. (Kim Depo, p. 46:16-19). Jang W. Cho was the president and an owner of Defendant J C Kleen, Inc., during this time period. (J C Kleen Depo, p. 22:9-21). J C Kleen, Inc., was in the business of providing cleaning services for dry cleaners, specifically with regard to leather, suede, rugs, wedding dresses, and

other specialty items. (J C Kleen Depo, p. 21:9-24). Mr. Kim picked up and delivered these items to J C Kleen's dry cleaner customers, mostly in Georgia, but also in Tennessee on an overnight trip on certain Wednesdays and Thursdays. (Kim Depo, pp. 27:22 – 28:2).

Mr. Kim was paid at a daily rate of $100.00, and on weeks when he would make the overnight trip to Tennessee, he was paid an additional $100.00. (Kim Depo, pp. 16:20-21 & 27:25 – 28:2).

Mr. Kim's employment with J C Kleen ultimately ended (Kim Depo, p. 38:9-13; J C Kleen Depo, p. 121:19-24), and he subsequently brought this action pursuant to the Fair Labor Standards Act of 1938 (29 U.S.C. § 201, *et seq.*) ("FLSA") claiming that Defendants had not properly compensated him for overtime hours, and seeking remedies under that Act.

Plaintiff has now filed his Motion for Summary Judgment [Ct. Doc. 37], and, for the reasons set forth below, Plaintiff's Motion should be denied.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. *Standard for Summary Judgment*

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact

and compels judgment as a matter of law in favor of the moving party." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836-37 (11th Cir. 2006); Fed.R.Civ.P. 56(a).

"A genuine factual dispute exists "if the jury could return a verdict for the non-moving party." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). "The moving party bears the burden of proof, and the district court should 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.' " *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007). " 'Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." ' " *Lockaby v. Top Source Oil Analysis*, 998 F. Supp. 1469, 1471 (N.D.Ga. 1998).

**B.**     ***Plaintiff Fails to Establish Unpaid Overtime Hours***

"Ordinarily, an employee bringing a private action for unpaid overtime must establish two elements: (1) that he worked unpaid overtime and (2) that the employer knew or should have known of the overtime work." *White v. Dixie*, 741 Fed. Appx., at 661-62.

Defendants have previously moved for summary judgment in their favor on the grounds that Plaintiff has failed to establish either of the above elements, and the deficiencies in the evidence that Defendants identified in their own Motion for

Summary Judgment should also now be considered by the Court in ruling on *Plaintiff's* Motion for Summary Judgment. In other words, even if the available evidence does not warrant judgment as a matter of law in Defendants' favor at this time, the issues previously raised by Defendants, alternatively, at the very least, present genuine issues of material fact for determination at trial which would preclude the entry of summary judgment for the Plaintiff.

      1.    <u>Grounds Already Advanced for Defendant's Summary Judgment</u>

With regard to the first element, Plaintiff has failed to present evidence sufficient to form a jury issue, or, alternatively, at the very least, has failed to present evidence sufficient to entitle him to judgment as a matter of law on this point. " 'An employee "has the burden of proving that he performed work for which he was not properly compensated." ' " *Segraves v. Agco, Inc.*, 2018 U.S. Dist. LEXIS 134233, *8, 2018 WL 3772397 (N.D. Ga., 1:17-CV-1997-TWT, August 9, 2018).

In a case like this, where there are no formal time records for Plaintiff's work, " 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' " *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007). Plaintiff's evidence in this case does not meet even this more lenient standard.

Plaintiff claims that "averaging out my hours for a week, roughly speaking, it was over 52 hours a week". (Kim Depo, p. 48:1-2). Plaintiff admits that his work hours varied with the seasons, and that "in the summertime, it's very slow, and then in the wintertime, we get to be really busy." (Kim Depo, p. 12:9-10). In addition, "[t]he number of customers which Mr. Kim had to drive to varied each week based on the needs of the customers. In particular, with respect to the Tennessee trip, during the busy season, Mr. Kim could have to visit fifty (50) locations, but when things were less busy, he might have to visit as few as ten (10) locations." Affidavit of Jang W. Cho ("Cho Aff."), ¶ 17. Under further questioning at his deposition, Plaintiff also gave the following answers:

> Q:    I guess what I'm asking is, you said 52 is an average. In the summer, what would be the average?
>
> A:    So yes, when I say 52 hours average weekly, I am calculating the summer slow time and the wintertime together.
>
> THE INTERPRETER:    I did not have a chance to ask your question.
>
> (Interpreting for the witness)

THE WITNESS: ***I can't say this is accurate***

***because it really depends on the schedule.*** So

even if we say, you know, summertime, it doesn't,

you know, reduce the hours dramatically. Of

course, you know, wintertime, we are really busy.

(Kim Depo, pp. 48:20 – 49:8) (emphasis added).

In fact, Plaintiff offers no explanation as to how he arrived at a number of 52 average hours weekly, and thus no reasonable inference can be made that that number is even approximately accurate, particularly when Plaintiff does not provide a sufficient explanation as to how he handled a number of factors that would be critical in reaching an accurate number.

Plaintiff admits that:

Q:     If you got done early, say in the summer,

did you just go home?

A:     Yes.

(Kim Depo, p 17:4-6).

Moreover, Plaintiff's definition of summer is ambiguous:

Q:     When you say the "summertime," what months

Are you talking about?

A:      Starting in June, July, August, before

Thanksgiving time.

(Kim Depo, p. 29:17-20).

Plaintiff also cannot account for time that he missed from work:

Q:      At times, sir, did you miss work?

A:      Yes.

Q:      For what reasons?

A:      Usually when I'm sick.

Q:      Do you know the dates you were sick?

A:      I don't know.

(Kim Depo, p. 32:18-23).

Q:      Just curious. How many times do you think

you were absent in the two years leading up to the

termination?

A:      I don't remember.

(Kim Depo, p. 53:9-12).

Q:      In making these claims, have you made an

analysis thinking back of all the times that you

missed work in the two years before. Have you looked

into that to determine how much time you actually did

miss?

   A:  ***Well, I wouldn't say that I analyzed it,*** but

generally speaking, you know, during that timeframe,

I conveyed to my attorney what my thoughts were.

(Kim Depo, pp. 63:25 – 64:7) (emphasis added).

   In addition, Plaintiff does not reasonably explain the impact on his stated

average of his own self-professed expertise in efficiently completing his work:

   Q:  Do you know whether any of these employees,

if they all did the same routes at different speed or

time?

   A:  Obviously yes, that's true.

   Q:  Do you think you were the fastest?

   A:  I think so.

   Q:  You don't know though; right?

   A:  For the most part I know. That's why – you

know, in order to save time – I report to work in

the early hours and so forth.

(Kim Depo, p. 67:3-12).

Finally, whatever evidence Plaintiff has presented in support of his claim for unpaid overtime hours is undermined by his own logical inconsistencies in his testimony. For example, in discussing how long a daily route would take, Plaintiff testified as follows:

A:      Yes. So in a day, if I'm doing these local businesses, then I would go about 50 places.

Q:      You'd go where?

A:      Fifty places, if I do local.

Q:      Okay, understood. How long did you spend at each store when you did drop off and pickup?

A:      It depends. It really depends. Sometimes in terms of like insurance company, sometimes I have to spend an hour.

Q:      In terms of what?

A:      In terms of certain cases. When I talk about insurance company, it's not actual insurance company. It's vendors that deals with goods, you know, from insurance company, you know, like claims, flood or, you know, fire, whatever.

> Q:     Understood.
>
> A:     So, you know, cases like that, it would take
>
> an hour, two hours. And then, you know, any other
>
> general, you know, dry cleaners, we're talking less
>
> than 30 minutes.

(Kim Depo, pp. 15:14 – 16:8).

This testimony simply cannot be reconciled with Plaintiff's testimony about his weekly hours. If each stop takes somewhere from "less than 30 minutes" (which reasonably implies not *much* less than thirty minutes) to "two hours", and Plaintiff made fifty stops in a single day, even without factoring in travel time, we have already gone beyond the available hours in a day.

In short, Plaintiff has the burden of proving that he worked unpaid overtime hours, and the amount and extent of that work, but the evidence in this case does not allow even a "just and reasonable inference". *See*, *e.g.*, *Segraves v. Agco, Inc.*, 2018 U.S. Dist. LEXIS 134233, at *9-10 ("The only evidence provided by the Plaintiff as to this issue is a list of hours and dates. The Plaintiff provides no explanation of the meaning of this list or how it was created. It also only provides hours for a handful of months worked in 2016 and 2017. This is not the type of evidence from which the Court could draw a reasonable inference in the Plaintiff's favor as to the amount of

uncompensated overtime hours worked. Due to this lack of evidence, he has therefore failed to establish a prime facie FLSA overtime claim.").

2.    <u>New Grounds</u>

In addition, there is clear evidence that the route Plaintiff drove should not have taken him more than forty (40) hours. Specifically, Sung Mo Koo has testified that "[d]uring the fall of 2018, I took over a delivery route that had previously been driven by another driver named Sunkyoo Kim." Affidavit of Sung Mo Koo ("Koo Aff."), ¶ 3. "This route involved locations in Georgia on Mondays, Tuesdays, and Fridays, and an overnight trip to Tennessee on Wednesdays and Thursdays." *Id*., at ¶ 4. Most notably, Koo has stated that "*<u>[d]uring my time driving this weekly route, I did not work more than forty (40) hours in a week.</u>*" *Id*., at ¶ 5 (emphasis added). And he did this until he "left J C Kleen, Inc., in early 2019." *Id*., at ¶ 6.

Koo's testimony is further clarified by Defendant Cho who has stated that "after Mr. Kim's employment ended, I had another driver, Sung Mo Koo, take over Mr. Kim's route." Cho Aff., ¶ 6. "Mr. Koo initially took over only part of the route, specifically the part of the route on Tuesdays through Fridays, while initially continuing to work a different route on Mondays, however, after about a month, around September 2018, Mr. Koo eventually took over Mr. Kim's entire route." *Id*., at ¶ 7. Ultimately, "[f]rom approximately September 2018 through early 2019, when

Mr. Koo left, he drove the same route that Mr. Kim had previously driven." *Id.*, at ¶ 8.

This evidence casts doubt on the evidence that Plaintiff has presented regarding his hours worked, raising, at the very least, a triable issue. In addition, Defendants dispute a number of the starting and ending times Plaintiff has alleged, particularly with regard to the ending time on Tuesdays, when Plaintiff would often finish up around lunchtime or 12:00 p.m. *See* Cho Aff., ¶ 20-22; *see also* J C Kleen Depo, pp. 72:16 – 73:13 & 90:2-14. Plaintiff also "had a daughter that he had to take care of, and would often leave early to get home." Cho Aff., ¶ 19. "Plaintiff also took many days off and/or failed to show up for work on many occasions, frequently on Fridays." Defendant J C Kleen, Inc's Responses to Plaintiff's First Set of Discovery Request [Ct. Doc. 38-5] ("Defendants' Discovery Responses"), p. 7.

Lastly, Plaintiff, for purposes of his Motion for Summary Judgment, has taken the position that he actually averaged forty-five (45) hours a week, apparently in an attempt to argue that forty-five (45) hours is undisputed. This is entirely without merit. Defendants have never stated that Plaintiff actually worked forty-five (45) hours per week, and this have been clarified through Mr. Cho's Affidavit.

Mr. Cho has stated that "[f]or purposes of clarifying my responses to Plaintiff's Interrogatory No. 3 and Plaintiff's Interrogatory No. 6, although there

were certain time frames within which Sunkyoo Kim was generally expected, and agreed, to work, as I stated in those responses, I did not expect Mr. Kim would be working every one of those hours without taking breaks, including lunch." Cho Aff., ¶ 2. Mr. Cho further stated that "[i]n fact, even without Mr. Kim taking breaks, I did not expect that he would be working every one of the hours of the time frames I identified in my responses to Plaintiff's Interrogatory No. 3 and Plaintiff's Interrogatory No. 6." *Id.*, at ¶3. "Although the total amount of time within those identified time frames was forty-five (45) hours, this does not mean that I expected or believed that Mr. Kim was actually working forty-five (45) hours in a week." *Id.*, at ¶ 4.

Rather, "***I expected that Mr. Kim would be actually working no more than forty (40) hours in a week, and I had no knowledge of him working more than forty (40) hours a week during the time period at issue in this case, October 2, 2015, through August 2, 2018.***" *Id.*, at ¶ 5 (emphasis added).

For all of these reasons, Plaintiff in this case has failed to establish the first essential element of his claim, and at the very least, genuine issues of material fact remain precluding summary judgment for the Plaintiff.

**C.**   ***Plaintiff Fails to Establish Actual or Constructive Knowledge of Defendants***

Plaintiff has likewise failed to present evidence sufficient to create a jury issue on the question of whether Defendants had actual or constructive knowledge of any uncompensated overtime hours, or, alternatively, at the very least, has failed to present evidence sufficient to entitle him to judgment as a matter of law on this point.

1.   Grounds Already Advanced for Defendant's Summary Judgment

"An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift." *Allen v. Bd. of Pub. Educ.*, 495 F.3d, at 1319.

In this case, the evidence is undisputed that Defendants had neither actual nor constructive knowledge of any unpaid overtime hours that Plaintiff claims to have been working, or, alternatively, at the very least, there remains a genuine issue of fact regarding the existence of any such actual or constructive knowledge.

First, Defendants expected the drivers to work no more than eight hours a day. In J C Kleen's deposition, Defendant Cho testified, in relevant part, as follows:

Q:     -- what is your expectation as to number of

hours a driver works per day?

A:     Not more than eight hours. And even though

he works more than eight hours, it's first time when

he's starting when he get trained, he is not skillful

worker that he takes more time. But when he gets

skilled and he knows what to do, then he lot less

than eight hours. …

(J C Kleen Depo, p. 75:16-23).

Second, Defendants did not have knowledge of Plaintiff's claimed unpaid

overtime work:

Q:    Did he work more than 40 hours a week if he

did his delivery from your knowledge?

A:    No.

(J C Kleen Depo, p. 139:11-13).

Third, and finally, Plaintiff, a former business owner himself who was

familiar with overtime pay (Kim Depo, pp. 9:6 – 10:11), admits that he never

informed Defendants of any overtime or complained about it.

Q:    You said earlier that you had an employment

offer, you understood the terms of the agreement.

Did you ever, like, renegotiate terms or talk about

hours or anything like that?

A:    No.

(Kim Depo, p. 33:14-18).

Q:      Well, was there any discussion of the number of hours as opposed to what you were paid on how that would work?

A:      No.

(Kim Depo, p. 37:4-7).

Q:      Up to the time of your termination, you never complained about being underpaid; isn't that true?

A:      That's right.

Q:      You never raised the issue of overtime; correct?

A:      That's right.

(Kim Depo, p. 51:17-23).

Q:      In other words, sitting in, you know, Mr. Cho's shoes, did he have any idea of knowing how many hours you were actually working on each shift or the average or what days you came early or later; did he have any way of knowing?

A:      ***That's right, he wouldn't know.***

Q:     You never sent him a text and said, oh, this

took 50 hours this week, or, oh, this took 45?

A:     ***Nobody would know.***

(Kim Depo, pp. 37:18 – 38:1) (emphasis added).

In short, Plaintiff has the burden of showing that Defendants had actual or constructive knowledge of his claimed overtime, and he has failed to meet that burden. *See*, *e.g.*, *Allen v. Bd. of Pub. Educ.*, 495 F.3d, at 1323 ("Alice Johnson testified that she worked unpaid hours when she stayed late, but no one told her to work off the clock and she did not inform anyone of her overtime work. She testified that she does not know how the Board should have known that she was working without compensation. As to Johnson, it was not error for the district court to grant summary judgment in favor of the Board, as Johnson's unsupported declaration constitutes a mere scintilla of evidence that the Board had actual or constructive knowledge of her overtime work.").

2.   New Grounds

Defendant Cho has further confirmed that he had no actual or constructive knowledge of any overtime hours being worked by Plaintiff. Specifically, "I expected that Mr. Kim would be actually working no more than forty (40) hours in a week, and I had no knowledge of him working more than forty (40) hours a week

during the time period at issue in this case, October 2, 2015, through August 2, 2018." Cho Aff., ¶ 5. Given these facts, it is clear that Plaintiff raised no issue regarding overtime hours, nor made Defendants aware of any alleged overtime hours, until after he was fired. *See* J C Kleen Depo, p. 121:6-16.

For all of these reasons, Plaintiff in this case has failed to establish the second essential element of his claim, and at the very least, genuine issues of material fact remain precluding summary judgment for the Plaintiff.

**D.**   ***Derivative Claims and Damages***

   1.   <u>Liquidated Damages and Good Faith</u>

The remedy of liquidated damages is expressly contingent on the liability of an "employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207]" and a "judgment awarded to the plaintiff". 29 U.S.C. § 216(b). *See Jarmon v. Vinson Guard Servs.*, 2010 U.S. Dist. LEXIS 148303, *40 (N.D.Ala., 2:08-CV-2106-VEH, July 13, 2010) (denying plaintiff summary judgment on the issues of liquidated damages, good faith, and attorney's fees as premature before the question of liability is determined). Since there has been no such determination of liability on the underlying claim, and Defendants have demonstrated that, at the very least, genuine issues of material fact remain for trial, any determination regarding liquidated damages or Defendants' good faith defense would be premature.

In addition, Defendant Cho has made clear he had no reason to be on notice that the requirements of the FLSA were implicated in the case of Mr. Kim.

Mr. Cho has stated that " [w]hen employees in my company worked more than forty (40) hours a week, they were paid overtime." Cho Aff., ¶ 14. *See also* J C Kleen Depo, p. 92:13 – 93:1. However, with respect to the drivers, they "were paid a daily rate, but I expected that they would be actually working no more than forty (40) hours in a week, and I had no knowledge of any drivers working more than forty (40) hours a week during the time period at issue in this case, October 2, 2015, through August 2, 2018." Cho Aff., ¶ 15.

In this context, "I did not investigate further regarding the use of a daily rate with respect to the overtime law because I expected that the drivers would be actually working no more than forty (40) hours in a week, and I had no knowledge of any drivers working more than forty (40) hours a week during the time period at issue in this case, October 2, 2015, through August 2, 2018." *Id*., at ¶ 16.

Accordingly, Defendants respectfully submit that there is sufficient evidence of good faith to create a triable issue because they were not given any reason to believe that further investigation as to compliance with the FLSA was even necessary, given the absence of any knowledge of Plaintiff actually working any overtime hours.

2.      Statute of Limitations and Willfulness

Similarly to the issues of liquidated damages and good faith, since there has been no determination of liability on the underlying claim, and Defendants have demonstrated that, at the very least, genuine issues of material fact remain for trial, any determination regarding willfulness would be premature before the existence of a violation has even been established. *Allen v. Bd. of Pub. Educ.*, 495 F.3d, at 1324 (reversing summary judgment on issue of willfulness where triable issues remain as to whether FLSA violation occurred).

"To establish willfulness, Plaintiffs must show that an employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Ojeda-Sanchez v. Bland Farm, LLC*, 2010 U.S. Dist. LEXIS 84752, *46 (S.D.Ga., 608CV096, August 18, 2010). Plaintiff cannot meet that standard here. For the same reasons stated above regarding good faith, Defendants respectfully submit that there is, at the very least, sufficient evidence of a lack of willfulness to create a triable issue because Defendants were not given any reason to believe that further investigation as to compliance with the FLSA was even necessary, given the absence of any knowledge of Plaintiff actually working any overtime hours.

Defendants' generosity is also evident, in often overpaying Plaintiff when work was slow. "So many, many times, it's a lot less than the 40 hours, especially in summer time." J C Kleen Depo, p. 91:10-12. Defendants would even pay Plaintiff on days he missed work. "And I even pay more when they just miss a day. The next week, I should take out, but I don't take out all the money they missed, you know." *Id*., at p. 129:14-17.

Given these factors, willfulness has not been shown in this case.

3.    Calculation of Damages

With respect to Plaintiff's calculation of damages, Defendants note that in Plaintiff's Complaint, he stated that "Plaintiff's regular hourly rate was $12.50 ($100 divided by 8), and his overtime rate was $18.75. (Regular rate time 1.5)." Plaintiff's Complaint, ¶ 25. " '[A] party is bound by the admissions in his pleadings.' " *Columbus Bank & Trust Co. v. McKenzie Trucking & Leasing, LLC*, 2009 U.S. Dist. LEXIS 98882, *10 (M.D.Ga., 4:07-CV-189 (CDL), October 23, 2009). " '[J]udicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.' " *Id*., at *10-11. Accordingly, Plaintiff should be bound by his judicial admissions regarding his regular rate of pay.

To the extent Plaintiff is permitted to present evidence regarding the higher regular rate set forth in his summary judgment Brief, Defendants would just note all of the deficiencies in Plaintiff's evidence regarding his hours worked, and the contradictory evidence advanced by Defendants, more fully set forth in Section B of this Brief, and would respectfully submit that, at the very least, material issues of fact remain as to the amount of damages that Plaintiff would be entitled to in the event he prevails in this action. Summary judgment on this issue would be improper.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants hereby respectfully move this Court to deny Plaintiff's Motion for Summary Judgment on either of the following grounds: (1) on the grounds that there remain no genuine issues of material fact to be tried, but it is, in fact, not the Plaintiff, but rather the *Defendants* who are entitled to judgment as a matter of law for the reasons advanced in support of Defendants' Motion for Summary Judgment; or (2) alternatively, on the grounds that there *do* remain genuine issues of material fact to be tried and neither party is entitled to judgment as a matter of law.

[SIGNATURE(S) ON FOLLOWING PAGE]

This 6th day of September, 2019.

                                   Respectfully submitted,
                                   MCGAHREN LAW FIRM, LLC

                                   /s/ *Matthew F. McGahren*
                                   Matthew F. McGahren, Esq.
                                   Georgia Bar No. 491330
                                   Eric J. Marlett, Esq.
                                   Georgia Bar No. 470931

                                   Attorneys for Defendants

                                   6171 Crooked Creek Rd., Suite A
                                   Peachtree Corners, GA 30092
                                   Ph: (770) 729-1779
                                   Fax: (770) 729-1774
                                   matt@mcgahrenlaw.com
                                   eric@mcgahrenlaw.com

*Sunkyoo Kim vs. JC Kleen, Inc., et al.*

Civil Action No. 1:18-CV-04595-ELR

**<u>BRIEF IN SUPPORT OF</u>**
**<u>DEFENDANTS' RESPONSE IN OPPOSITION TO</u>**
**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

- 23 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUNKYOO KIM,                          |
                                      |
    Plaintiff,                |
                                      |        Civil Action No.
vs.                                   |        1:18-CV-04595-ELR
                                      |
JC KLEEN, INC., and                   |
JANG W. CHO,                          |
                                      |
    Defendants.               |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that this brief was prepared using the Times New Roman, 14-point font and is therefore in compliance with the font types and font sizes set forth in LR 5.1(C).

This 6th day of September, 2019.

/s/ *Matthew F. McGahren*
Matthew F. McGahren, Esq.
Georgia Bar No. 491330

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUNKYOO KIM, | \| |
| | \| |
|     Plaintiff, | \| |
| | \|       Civil Action No. |
| vs. | \|       1:18-CV-04595-ELR |
| | \| |
| JC KLEEN, INC., and | \| |
| JANG W. CHO, | \| |
| | \| |
|     Defendants. | \| |

## CERTIFICATE OF SERVICE

I, Matthew F. McGahren, Attorney for Defendants, do hereby certify that I have served the within and foregoing **BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** by means of electronic service through the Court's CM/ECF system to the following:

> Brian G. Kim, Esq.           brian@leonandkim.com
> Brian Kim, PC
> 1815 Satellite Blvd., #303
> Duluth, GA 30097

This 6th day of September, 2019.

> /s/ *Matthew F. McGahren*
> Matthew F. McGahren, Esq.
> Georgia Bar No. 491330